# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CHILDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 873 DDN |
| | ) | |
| MEGAN BRENNAN, Postmaster | ) | |
| General; THEODORE NAPPIER; | ) | |
| and GARY BARNES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS
## AND PLAINTIFF'S MOTION FOR ADR EXTENSION

This action is before the court on the motion of defendants Megan Brennan, Theodore Nappier, and Gary Barnes to dismiss plaintiff David Childers' First Amended Complaint (Doc. 26) in its entirety. (Doc. 42). Plaintiff opposes the dismissal of Counts I through III. (Doc. 46). After hearing oral arguments from the parties on July 28, 2017, the court grants defendants' motion in part and otherwise denies it.

## I. BACKGROUND

Plaintiff is an automotive technician employed by the United States Postal Service ("USPS") facility in St. Louis, Missouri. (Doc. 26, ¶ 10). He alleges he is disabled due to impairments that specifically include permanent nerve damage impairing his left arm and right shoulder, dyslexia, a hearing impairment, and limited mobility in his right ankle and knee. (Doc. 26, ¶ 11). In 2013 and 2014, he filed three formal charges of discrimination with the USPS Equal Employment Opportunity Office ("EEO"). (Doc. 26, at 3, 4, and 7).

On June 16, 2016, plaintiff commenced this judicial action by filing his complaint against defendant Megan Brennan, the Postmaster General of the United States. This court determined on January 12, 2017, that the judicial complaint was timely filed due to equitable tolling. (Doc. 23).

On January 18, 2017, plaintiff filed the currently pending first amended complaint. (Doc. 26). In it he added two defendants in their personal and official capacities: Theodore Nappier, who was formerly plaintiff's direct supervisor and the manager of the USPS vehicle maintenance facility in St. Louis, Missouri, and Gary Barnes, who was at relevant times the USPS Supervisor of Vehicle Maintenance in St. Louis, Missouri. (Doc. 26, ¶¶ 6-7).

Plaintiff's amended complaint is organized in 5 Counts. Counts I, II, and III variously bear captions of discrimination based on disability and retaliation, and respectively refer to his three administrative charges by EEO agency case number. Count IV is captioned as retaliation based on disability and cites 42 U.S.C. § 1981, and Count V is captioned as a constitutional violation under the First and Fourteenth Amendments and cites 42 U.S.C. § 1983. (Doc. 26).

In response to the pending motion to dismiss, plaintiff agrees that defendants Nappier and Barnes and Counts IV and V should be dismissed for the reasons set forth in the motion to dismiss. (Doc. 46, at 1).

The court discerns from the facts alleged in the remaining Counts I-III alleged claims against defendant Brennan in her official capacity of unlawful discrimination under the Rehabilitation Act of 1973 ("Act"), 29 U.S.C. § 794, due to alleged disparate treatment, a hostile work environment, and retaliation.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following in his amended complaint. On February 5, 2013, defendants Brennan and Nappier denied plaintiff's request for a change in work schedule. (Doc. 26, ¶ 13).

Plaintiff complained about this decision between February 5 and July 1, 2013. (*Id.* at ¶ 14). On July 1, 2013, plaintiff's manager threatened to fire him and asked in a loud voice why he was "just standing around," when he was performing his normal job duties. (*Id.* at ¶ 15). On July 31, 2013, plaintiff's manager instructed him to use his left arm to complete a task, in violation of his medical restrictions. (*Id.* at ¶ 16). Plaintiff was threatened with a disciplinary Letter of Warning. *Id.*

Plaintiff alleges that on January 14, 2014, the Vehicle Maintenance Manager ordered the lead mechanic to assign plaintiff the "hardest and nastiest jobs." (*Id.* at ¶ 25). On several occasions, defendants' agents did not permit plaintiff to perform all of the jobs in his modified job assignment. (*Id.* at ¶ 26). On January 21, 2014, plaintiff discovered that his toolbox, which weighs approximately 1,000 pounds, had been moved at defendants' direction, and that he had been assigned a specific work area far away from his toolbox, making it more difficult for him to fulfill his job duties. (*Id.* at ¶ 27). On January 22, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted plaintiff's co-worker to throw an oil filter at plaintiff and curse at him. On January 23, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted plaintiff's co-worker to curse at him and to make obscene gestures toward him. On January 24, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted plaintiff's co-worker to throw a ball joint removal tool toward him. On January 27, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted "someone" to place a copy of the Postal Zero Tolerance Policy in plaintiff's toolbox. On January 28, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted plaintiff's co-worker to throw an EGR valve toward him. On January 29, 2014, defendants Nappier or Barnes instructed, encouraged, or permitted plaintiff's co-worker to throw a box of maxi pads at him. (*Id.* at ¶¶ 28-33). Although plaintiff complained to management and despite defendants' knowledge of these actions, management took no action. *Id.*

Plaintiff alleges that on July 15, 2014, defendants informed him that his e-travel request would not be processed, which delayed his reimbursement for job-required travel

costs and denied overtime pay altogether. (*Id.* at ¶ 42). On August 29, 2014, defendants instructed plaintiff to report for a threat assessment.

Plaintiff alleges that on at least one occasion, defendants Nappier or Barnes instructed, encouraged, or permitted a co-worker to throw and strike plaintiff with an oil filter. (*Id.* at ¶ 44). Despite defendants' knowledge of this occurrence, they failed to discipline the employee or take any action to deter such occurrences. (*Id.*).

## II. MOTION TO DISMISS

Defendants move to dismiss the entirety of the complaint. Plaintiff opposes the motion.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss part or all of a case for the claimant's failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). A complaint "must include enough facts to state a claim to relief that is plausible on its face," providing more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555.

"[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King v. Spalding*, 467 U.S. 69, 73 (1984)). A complaint must not only give a defendant fair notice of the basis for its claims, it must also state claims upon which relief could be granted under the employment discrimination statute. *See id.* Although a plaintiff is not required to set forth "a detailed evidentiary proffer" in his complaint, "elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit."

*Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. at 512).

In reviewing the pleadings under this standard, the court accepts all of the plaintiff's factual allegations as true and draws all inferences in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Comm., LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012). The court additionally "is not required to divine the litigant's intent and create claims that are not clearly raised, . . . and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citations omitted).

### B. Disparate Treatment Claim

Defendant asserts that plaintiff has failed to allege he was subject to an adverse employment action for purposes of a disparate treatment claim. (Doc. 48). Defendant also argues that plaintiff has failed to allege that his disability was the "sole impetus" for the adverse employment action taken against him. *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n. 5 (8th Cir. 1999)).

To establish disparate treatment discrimination under the Rehabilitation Act of 1973, a plaintiff must show that (1) he was disabled; (2) he was qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) because of his disability, he suffered an adverse employment action. *Dick v. Dickinson State University*, 826 F.3d 1054, 1060 (8th Cir. 2016); *EEOC v. Wal–Mart Stores, Inc.,* 477 F.3d 561, 568 (8th Cir. 2007). An adverse employment action under the Rehabilitation Act is a "tangible change in working conditions that produces a material employment disadvantage." *Dick v. Dickinson State Univ.*, 826 F.3d at 1060. These include such actions as "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Id.* Furthermore, a claim for disparate treatment on the basis of

disability must allege that other, similarly-situated employees who were not disabled were treated differently than plaintiff. *Id.*

Although plaintiff alleges general "discrimination" in each of his counts, he only alleges that defendants treated similarly-situated, non-disabled employees differently with regard to a single event: when defendant denied him a single request for a change in his work schedule on February 5, 2013. (Doc. 26, ¶¶ 13-14). Plaintiff alleges that defendants routinely grant these requests to employees who are not disabled. (*Id.*). However, even if true, the denial of a single scheduling request by itself is insufficient as a matter of law to constitute an adverse employment action. Plaintiff has not alleged facts from which the court can infer that this would affect his future career prospects. *See Dick*, 826 F.3d at 1059. The cases plaintiff cites to support his argument involve multiple schedule changes or permanent transfers materially changing the terms and conditions of the plaintiffs' employment. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 391-92 (6th Cir. 2010) (when employer learned plaintiff was pregnant, she was transferred from a welding position to a "tool-room" position, which significantly diminished her responsibilities and did not allow her to use her advanced skills); *Ginger v. D.C.*, 527 F.3d 1340, 1344 (D.C. Cir. 2008) (employer reassigned employees from permanent midnight shift to shifts that rotated from day to night every four weeks, which severely disrupted their sleeping schedules, caused them to lose a four percent pay differential, and interfered with their abilities to work overtime and part-time day jobs); *E.E.O.C. v. Wyeth*, 302 F. Supp. 2d 1041, 1071 (N.D. Iowa 2004) (employer's approval of widespread scheduling requests to avoid working with plaintiff resulted in plaintiff being required to perform her duties without assistance from her coworkers and to perform additional work).

A "mere inconvenience or an alteration of job responsibilities is not sufficient to constitute an adverse employment action." *Spees*, 617 F.3d at 391 (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). The alleged denial of a single request by plaintiff for a schedule change, even when non-disabled

employees' requests are routinely granted, does not constitute an adverse employment action for purposes of a disparate treatment claim under the Rehabilitation Act.

For these reasons, plaintiff's disparate treatment claim due to the denial of a change in work schedule is dismissed.

## C. Hostile Work Environment Claim

Defendant argues that the frequency and amount of harassment plaintiff alleges do not rise to the level of creating a hostile environment. Plaintiff argues that he has alleged sufficient facts to put defendant on notice of his claim. While plaintiff must give defendants fair notice of his claim, his complaint must also state a plausible claim upon which relief could be granted under the employment discrimination statute, by alleging facts capable of supporting an inference of hostile work environment. *See Twombly*, 550 U.S. at 570; *Swierkiewicz*, 534 U.S. at 507.

To establish a hostile work environment based on disability under the Rehabilitation Act of 1973, plaintiff must show that (1) he is a member of a class protected by the statute, (2) he was subject to an unwelcome hostile work environment, (3) the hostile work environment occurred because of his membership in the protected class, and (4) the hostile work environment affected the terms, conditions or privileges of his employment because of its severity. *Sellers v. Deer & Co.*, 791 F.3d 938, 945 (8th Cir. 2015).

In assessing whether the severity of alleged hostile work environment conduct meets the necessary threshold, courts consider the totality of all the circumstances presented. *Id.* This includes how often the conduct occurred, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's performance on the job. *Id.* (citations omitted). Rude, abrasive, insensitive, or unkind conduct is insufficient alone to constitute harassment or a hostile work environment actionable under the Act. *Id.* The alleged conduct must be "objectively so severe or pervasive as to alter the conditions of plaintiff's work environment." *Stipe v. Shinseki*, 690 F. Supp. 2d 850, 884 (E.D. Mo. 2010).

Conduct can constitute unwelcome hostility or harassment and yet not affect the terms, conditions, or privileges of a plaintiff's employment. *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012) (finding that physical harassment did not reach the level of creating a hostile work environment when the plaintiff was able to perform his duties at work despite the offensive conduct); *Stuart v. Gen. Motors Corp.,* 217 F.3d 621, 633 (8th Cir. 2000) (holding that plaintiff was unable to demonstrate a hostile work environment because she was able to perform her duties at work unimpeded by the harassment and declined a transfer to a different location). For the alleged frequency and type of conduct to meet this standard, "[m]ore than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Blomker v. Jewell,* 831 F.3d 1051, 1056–57 (8th Cir. 2016) (citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).[1]

Defendant argues that the alleged incidents were isolated events and therefore fail to state a claim for hostile work environment. One event is alleged to have occurred in July 2013 (Doc. 26, ¶ 13), a cluster of events occurred six months later in January 2014 (*id.,* ¶¶ 24-33), and one event was undated (*id.,* ¶ 44). There are no allegations in the complaint of more frequent conduct.

Considering the entirety of plaintiff's amended complaint, a factfinder can reasonably infer that plaintiff was subject to an unwelcome hostile work environment actionable under the Act. The alleged conduct was at times physically threatening – when objects were thrown at plaintiff or when he was instructed to perform tasks inconsistent with his medical restrictions – and often humiliating. Even though these

---

[1] While some of the cases cited in this section involve claims for hostile work environment under the Americans with Disabilities Act ("ADA") or under Title VII, cases interpreting the ADA and the Rehabilitation Act are interchangeable, because "the same basic standards and definitions are used under [both]." *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002). The Eighth Circuit construes the phrase "terms, conditions, or privileges of employment" with reference to Title VII jurisprudence. *Ryan*, 679 F.3d at 779.

alleged incidents were somewhat isolated, they are sufficiently extreme to support an inference that they affected the conditions of plaintiff's employment, in that he had to work in apprehension of being struck by thrown objects, was given assignments outside of his physical capacity, and had his 1,000 pound toolbox moved to a place where he could not access it easily to perform his duties.

Accordingly, the motion to dismiss the hostile work environment claim is denied.

### D.   Retaliation Claim

Finally, defendant argues that plaintiff's allegations fail to state a claim for retaliation and should be dismissed. The elements of a retaliation claim under the Rehabilitation Act are that (1) plaintiff participated in activity protected by statute; (2) he suffered an adverse employment action; and (3) there is a causal connection between the activity and the adverse action. *Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015). Like the disparate treatment claim, an adverse employment action in this context is a "tangible change in working conditions that produces a material employment disadvantage." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, at 1059 (explaining that "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects" are adverse employment actions).

Plaintiff has alleged he participated in statutorily protected activity by filing EEO charges of discrimination. (Doc. 26, at 3, 4, 7). He has alleged that filing these charges caused retaliatory conduct: defendants failed to approve an e-travel request that resulted in the loss of overtime pay, approved of demeaning coworker behavior, and created a hostile work environment.

Defendants argue that these allegations, even if true, do not rise to the level of adverse employment actions. They assert that the behavior of plaintiff's coworkers was not a "tangible change in working conditions" sufficient to produce a "material employment disadvantage," such as termination, a reduction in pay or benefits, or a change affecting plaintiff's future career prospects. (Doc. 48 at 6-7) (citing *Dick*, 826 F.3d at 1059).

As to plaintiff's allegation that defendants did not process his e-travel request, which caused him not to receive overtime pay, defendant argues that plaintiff has not alleged this claim was justified or that he was properly entitled to this overtime pay, nor does he allege that his request was properly completed without errors. Defendants also argue that even if plaintiff was entitled to this pay and it was denied, this occurred a single time, and this is not sufficient to constitute a tangible change in working conditions that is required to show an adverse employment action.

Plaintiff has sufficiently pled facts from which a factfinder can reasonably infer that he experienced an adverse employment action actionable under the Act. Retaliation claims under Title VII can be based on a hostile work environment and not solely on discrete adverse employment actions. *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 60-70 (2006). The Eighth Circuit has applied this standard to claims under the ADA, *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-46 (8th Cir. 2007), and to retaliation claims under the Rehabilitation Act. *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002). Adverse employment actions are those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N.*, 548 U.S. at 68). The court may examine the cumulative effect of allegedly retaliatory actions; it is not required to determine that each individual action alone was sufficiently adverse. *Kim v. Nash Finch Co*., 123 F.3d 1046, 1060 (8th Cir. 1997).

Plaintiff has pled sufficient facts for the court to infer that he endured a hostile work environment. Although the e-travel denial only occurred a single time and does not by itself constitute a material employment disadvantage, it can be considered in conjunction with the other hostile work environment allegations for the positive inference that plaintiff suffered adverse employment action as a result of his participation in statutorily-protected activity.

Accordingly, defendant's motion to dismiss is denied as to the retaliation claim.

## III. ORDER

For the above reasons,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss (Doc. 42) plaintiff's disparate treatment claim **is sustained.**

**IT IS FURTHER ORDERED** that the motion of defendants to dismiss (Doc. 42) **is denied** as to plaintiff's claims of hostile work environment and retaliation.

**IT IS FURTHER ORDERED** that the motion of defendants to dismiss (Doc. 42) **is sustained** as to Counts IV and V and all claims against defendants Theodore Nappier and Gary Barnes in their official and individual capacities.

**IT IS FURTHER ORDERED** that the unopposed motion of plaintiff for an extension of the deadline for the parties to designate an ADR neutral (Doc. 51) **is sustained. The parties may select an ADR neutral not later than September 8, 2017, and conclude the ADR proceedings not later than November 1, 2017.**

                                         /s/ David D. Noce  
                                   **UNITED STATES MAGISTRATE JUDGE**

Signed on August 10, 2017.